IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA ANSANELLI and CHARLES ANSANELLI,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>JP MORGAN CHASE BANK, N.A., and SEQUOIA PACIFIC MORTGAGE COMPANY, INC.,<br><br>　　　　Defendants.　　　　　　　　　／ | No. C 10-03892 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

**INTRODUCTION**

Defendant JPMorgan Chase Bank moves to dismiss plaintiffs' second amended complaint. Plaintiffs have alleged plausible claims for relief, but there are a few deficiencies. Accordingly, defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiffs Angela and Charles Ansanelli are homeowners with mortgage loans serviced by defendant JPMorgan Chase Bank. Plaintiffs purchased their home in 2000 (Compl. ¶ 36). In 2006, they refinanced the loan on their home with Washington Mutual Bank, for a resulting loan amount of $585,000 (*id.* ¶ 37). In 2007, plaintiffs took out another loan, called a home-equity loan, for $200,000, with defendant Chase (*id.* ¶ 41). Chase serviced both the refinance loan and the home-equity loan after its purchase of WaMu assets (the purchase-and-assumption agreement was signed on September 25, 2008). In December 2008, plaintiffs contacted Chase to request a

1  modification of their loans. Plaintiffs did not receive a response until March 2009 (*id.* ¶ 50).
2  Chase "dragged the [p]laintiffs along through a slow, frustrating, redundant and fraudulent
3  modification process," and "continually demanded piecemeal and duplicative paperwork,
4  indicated that the file was both complete and incomplete and that the process was stalled and
5  proceeding" (*id.* ¶ 53).

6        In June 2009, Chase agreed to place plaintiffs on a trial modification plan, guaranteeing
7  that if plaintiffs made payments on time in the modified amount for three months Chase would
8  provide a permanent modification of their loan (*id.* ¶ 57). Plaintiffs made these modified
9  payments from June to August (*id.* ¶ 58).

10        In August 2009, plaintiffs were informed that the refinance loan could not be modified
11  because plaintiffs had *excessive* cash reserves (*id.* ¶ 55). Then in September they were informed
12  that the home-equity loan could not be modified because plaintiffs did not have *enough* funds to
13  qualify (*id.* ¶ 64). After contacting Chase for clarification, plaintiffs' participation in the
14  modification program was reaffirmed and plaintiffs continued making payments on this basis
15  through February 2010, at which time permanent loan modification was denied because, they
16  were informed, "their file was missing critical documents necessary to evaluate their modification
17  request" (*id.* ¶¶ 68–69).

18        During the time plaintiffs made trial payments, Chase reported their loan as past due —
19  damaging plaintiffs' credit rating — while telling plaintiffs when they contacted Chase that the
20  loan was current and instructing them to continue paying the modified amount (*id.* ¶¶ 60–61).
21  Plaintiffs asked for written copies of the trial plan agreement, but Chase "refused to provide the
22  agreement in writing, with the intention of [later] disavowing the agreement" (*id.* ¶¶ 57, 63, 69).
23  Plaintiffs are current on their payments on the refinance loan but not the home-equity loan (*id.* ¶
24  70).

25        Plaintiffs' second amended complaint asserts six claims: (1) breach of contract; (2) breach
26  of the covenant of good faith and fair dealing; (3) fraud and deceit and/or negligent
27  misrepresentation; (4) negligence; (5) violation of the Real Estate Settlement Procedures Act; and
28

1  (6) violation of California Unfair Competition Law, Business and Professions Code Section

2  17200 *et seq.* (Dkt. No. 76). Defendant Chase now moves to dismiss all of these claims.

## ANALYSIS

### A.  STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

Federal Rule of Civil Procedure 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Rule 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

### B.  CHASE'S ASSUMPTION OF WAMU ASSETS PRECLUDES SOME BUT NOT ALL LIABILITY FOR CHASE

On September 25, 2008, the Office of Thrift Supervision closed Washington Mutual Bank and appointed the FDIC as receiver. Chase then entered into a purchase-and-assumption agreement with the FDIC to assume certain assets of WaMu. That agreement includes the following provision:

> 2.5  **Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or

3

> undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank [WaMu] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities *are specifically not assumed by the Assuming Bank* [Chase].

(Def. Request for Jud. Notice Exh. 3 (emphasis added)). Chase advances this provision now to argue that "[p]laintiffs cannot state any liability claims against [Chase] relating to the origination of the [f]irst [l]oan," which plaintiffs entered into with WaMu in 2006 (Br. 2). Specifically, defendant moves to dismiss plaintiffs' claims for negligence, violation of RESPA, and violation of Section 17200 on this basis (Br. 4).

Chase is correct *in part*. On one hand, Chase is not responsible for any liability of *WaMu* related to loans made by WaMu prior to September 25, 2008, the date of assumption, but it *is* responsible for its *own* liability related to such loans.* Subsequent to September 25, 2008, Chase began servicing the first loan previously made to plaintiffs by WaMu. The complaint states claims against *Chase* for its actions in servicing the loan subsequent to that assumption. As such, clause 2.5 of the purchase-and-assumption agreement does not bar any liability plaintiffs may prove against Chase for its actions related to the first loan subsequent to the assumption. Chase agrees with this concept (Reply 1).

On the other hand, clause 2.5 does bar any liability on the first loan arising from actions by WaMu preceding assumption by Chase. Any argument to the contrary by plaintiffs is foreclosed by the agreement language repeated above. *See also Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 414–15 (N.D. Cal. 2009) (White, J.). Plaintiffs also attempt to argue otherwise based on a successor-in-interest theory. But Chase is not the successor in interest to WaMu, because it acquired assets from the FDIC, not WaMu. *See also Yeomalakis v. F.D.I.C.*, 562 F.3d 56, 59–60 (1st Cir. 2009).

---

 * Plaintiffs could attempt to sue the FDIC to vindicate wrongdoing by WaMu, and indeed plaintiffs named the FDIC as a defendant in a prior version of their complaint, but plaintiffs stipulated to dismissal of the FDIC from this action on February 3, 2011.

4

In the context of the instant motion, however, these principles do not result in the dismissal of any of plaintiffs' claims, because the claims attacked — for negligence, violation of RESPA, and violation of Section 17200 — are not based wholly on alleged wrongdoing by WaMu. To the extent that these claims assert theories of liability for wrongdoing of WaMu, those theories are **DISMISSED**. Yet because the claims are primarily based on alleged wrongdoing by Chase, defendant's motion to dismiss on the basis that the purchase-and-assumption agreement precludes such liability is **DENIED**.

### C. BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs allege that Chase breached two separate and unrelated agreements: (i) an individual agreement for a trial period plan contract on the home-equity loan and (ii) as a third-party beneficiary to the servicer participation agreement between Chase and the United States (Home Affordable Modification Program). Defendant moves to dismiss this claim under both asserted theories of liability, and each will be addressed in turn.

#### 1. Trial Period Plan Contract Claim

As to this theory of liability, Chase argues that there was no valid contract between the parties because the alleged contract was not in writing. As alleged, however, the complaint states a valid claim because an exception to the statute of frauds applies. Under California Civil Code Section 1698, "(b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. [and] (c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration." Based on this code section, "if there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement 'executed' within the meaning of section 1698." *Raedeke v. Gibraltar Sav. and Loan Ass'n*, 10 Cal. 3d 665, 673 (1974). As the whole point of the breach of contract claim is that defendant did not perform, this issue turns on whether there was new consideration for the alleged trial period plan agreement.

Under California law, consideration exists even if the performance due "consists almost wholly of a performance that is already required and that this performance is the main object of

5

the promisor's desire. It is enough that some small additional performance is bargained for and given. . . . [It is sufficient] if the act or forebearance given or promised as consideration differs in any way from what was previously due." *House v. Lala*, 214 Cal. App. 2d 238, 243 (1963) (citations omitted). Furthermore, "consideration may be either a benefit conferred upon the promisor or a detriment suffered by the promisee." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 31–32 (2000).

According to the complaint, the parties made new promises which were separate and beyond the promises in the original contract. After the parties allegedly reached an agreement that plaintiffs' loans would be permanently modified if they complied with the trial period plan, plaintiffs expended time and energy and made financial disclosures in furtherance of the agreement, which they would not have been required to do under the original contract. California law recognizes that a detriment constituting consideration includes such "expenditure of time and energy." *Raedeke*, 10 Cal. 3d at 673. Chase also allegedly benefitted from the contract, in that plaintiffs' performance made Chase potentially eligible for incentive payments for modifying loans (*see* Compl. ¶ 25). The alleged agreement thus provided for benefits to defendant and detriments to plaintiffs beyond the preexisting mortgage agreement. Therefore, according to the allegations in the complaint and contrary to defendant, there was more than a promise to perform a preexisting legal duty by plaintiffs.

More of the same on defendant's argument for lack of consideration is its characterization of the alleged trial period plan agreement as a forbearance agreement. *First*, plaintiffs do not allege that Chase agreed to "forebear from exercising [its] right to foreclose" (Br. 5), nor that defendant *had* the right to foreclose when the parties entered into the alleged trial period plan agreement. *Second*, defendant cites *Secrest v. Security National Mortgage Loan Trust 2002-2*, 167 Cal. App. 4th 544, 552–54 (2008), for the proposition that a forbearance or loan modification agreement that modifies the mortgage note and deed of trust by substituting a new monthly payment is an agreement within the statute of frauds. Yet that decision in no way created a categorical rule that exceptions to the statute of frauds never apply to such agreements. Nor do any of the other decisions cited by defendant create such a categorical rule.

6

Once the facts develop, defendant may be entitled to re-raise its argument that consideration was lacking, but the complaint states a valid claim for breach of contract including the existence of consideration.

Defendant's final argument is as follows:

> Plaintiffs fail to allege that their oral Trial Period Plan contained any of the definite terms that reflect an agreement by the parties for a permanent loan modification that could be enforced by the Court. Specifically, Plaintiffs allege no document or other agreement that provides the principal amount of the modified loan, the term of the modified loan, the monthly payment amount, the applicable interest rate, or the amount of escrow payments owed, if any. Because Plaintiffs' SAC is silent with respect to "what the parties agreed to" as to any permanent modification, it should not be enforced by this Court. *Patriot Scientific Corp. v. Korodi*, 504 F. Supp. 2d 952, 959 (S.D. Cal. 2007) (courts will not "supply essential terms in order to create an enforceable contract").

(Reply 5). *First*, defendant fails to intimate a legal basis for the assertion that plaintiffs can only state a claim for breach of contract if the contract was a permanent modification agreement. *Second*, the complaint states that in June 2009, Chase agreed to place plaintiffs on a trial modification plan, guaranteeing that if plaintiffs made payments on time in the modified amount for three months Chase would provide a permanent modification of their loan (Compl. ¶ 57). This order declines to find that because the complaint fails to allege the specific amount of each payment required by the alleged contract that plaintiffs have failed to state a claim.

To the extent that defendant argues the complaint should be dismissed for failure allege the specifics of, or append, a written agreement, the complaint makes very clear that plaintiffs asked for written copies of the trial plan agreement, but Chase "*refused to provide* the agreement in writing, with the intention of [later] disavowing the agreement" (*id.* ¶¶ 57, 63, 69 (emphasis added)). In light of these allegations, it is wholly consistent that the complaint does not allege the specifics of, or append, a written agreement.

As the complaint includes sufficient factual allegations that there was valid consideration for the agreement, the complaint states a claim for breach of contract as to the trial period plan theory of liability. Defendant's motion to dismiss this theory is **DENIED**.

Defendant also moves to dismiss plaintiffs' claim for breach of the covenant of good faith and fair dealing. "[A]bsent those limited cases where a breach of a consensual contract term is not claimed or alleged, the only justification for asserting a separate cause of action for breach of

7

1  the implied covenant is to obtain a tort recovery." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
2  222 Cal. App. 3d 1371, 1395 (1990). Plaintiffs do not seek a tort recovery. Thus, plaintiffs'
3  claim is subsumed under their breach of contract claim, and plaintiffs shall pursue their covenant
4  theory through their contract claim. Defendant's motion to dismiss plaintiffs' claim for breach of
5  the covenant of good faith and fair dealing is therefore **GRANTED**. The jury will be appropriately
6  instructed on the covenant, should this case go to trial.

### 2. Servicer Participation Agreement Claim

Defendant moves to dismiss the second asserted breach of contract theory of liability, namely that Chase breached the servicer participation agreement it has with the United States. Plaintiffs sue as alleged third-party beneficiaries. The Home Affordable Modification Program, through servicer participation agreements, requires servicers such as Chase to perform certain loan modification and foreclosure prevention services.

In support of its argument that plaintiffs have no third-party beneficiary standing to sue based on the servicer participation agreement, defendant cites a plethora of decisions that have held that individual borrowers have no standing to sue to enforce such agreements because they are not intended third-party beneficiaries of the Home Affordable Modification Program (Br. 8–9; Reply 5). In opposition, plaintiffs ask that this order part company with the vast majority of decisions to have addressed this issue. Plaintiffs rely on the general principles set forth by our court of appeals in *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009). Plaintiffs argue that the servicer participation agreement is "*precisely analogous* to the contracts considered [there]in" (Opp. 11 (emphasis in original)). Not so. *First*, *Santa Clara v. Astra* considered pharmaceutical pricing agreements between the Secretary of Health and Human Services and various drug manufacturers, *not* the servicer participation agreements at issue here. *Second*, *Santa Clara v. Astra* is currently under review by the Supreme Court, oral argument having taken place in January. *Third*, *Santa Clara v. Astra* is much less "precisely analogous" to our question than the many other decisions cited by defendant that have held third-party beneficiary status lacking as to this *exact* scheme.

8

In attempting to refute the reasoning of decisions holding third-party beneficiary status to be lacking in the instant scheme, plaintiffs argue that such decisions "failed to follow *Santa Clara*, relying instead primarily on *Klamath*," referring to *Klamath Water Users Protective Association v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) (Opp. 12). To the contrary, *Santa Clara v. Astra* in no way abrogates the principles set forth in *Klamath* and in fact quotes extensively from that decision before applying the same principles to its own set of facts. *Santa Clara*, 588 F.3d at 1244–46. Therefore, decisions finding third-party beneficiary status lacking as to the servicer participation agreements do not sit on faulty ground for having cited *Klamath* for general principles.

Those general principles dictate that "[a]lthough intended beneficiaries 'need not be specifically or individually identified in the contract,' they still must 'fall within a class clearly intended by the parties to benefit from the contract.'" *Id.* at 1244 (citing *Klamath*, 204 F.3d at 1211). "'[P]arties that benefit from a government contract are generally assumed to be incidental beneficiaries,' rather than intended ones, and so 'may not enforce the contract *absent a clear intent to the contrary*.'" *Ibid.* (emphasis in original). The *third party* "must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Ibid.*

Plaintiffs have not shown that they meet this test, which would be to the contrary of many decisions holding otherwise, because *the complaint does not append the agreement and the agreement was not submitted with briefing on the instant motion*. This order cannot assess the intention of the contracting parties without the contract, so plaintiffs have fallen at the starting line of carrying their burden on this issue.

Plaintiffs point to the allegations in the complaint that assert Chase violated requirements of the servicer participation agreement. Even if it did, that is irrelevant to the threshold question of whether plaintiffs have standing to sue on the basis of such violations.

Plaintiffs put forth one decision that supports their proposition that borrowers are intended third-party beneficiaries under HAMP. *See Marques v. Wells Fargo Home Mortg., Inc.*, No. 09-cv-1985-L(RBB), 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010). One such decision in the face

9

1  of many others to the contrary is not persuasive, especially because *Marques*'s analysis of the
2  third-party beneficiary issue was dicta, as the court eventually held that plaintiff had failed to put
3  forth sufficient factual allegations to state a breach of contract claim and therefore dismissed the
4  same.

5  Moreover, the complaint states that at the time plaintiffs requested loan modification,
6  Chase had not yet signed the servicer participation agreement, though it had before the conclusion
7  of the trial period (Compl. 12 n.5). This in and of itself presents its own standing problem.

8  All in all, plaintiffs have not shown that the servicer participation agreement reflects the
9  express or implied intention of Chase and the United States to benefit third-party borrowers via
10 their contract. Plaintiffs accordingly do not have standing to assert this theory of breach of
11 contract liability, namely breach of the servicer participation agreement between Chase and the
12 United States. This theory of liability is accordingly **DISMISSED**, subject to leave to amend only
13 if a claim such as this is somehow revived by the Supreme Court in its impending *Santa Clara v.*
14 *Astra* decision. Or, of course, if so allowed by the court of appeals in the instant case.

### D. FRAUD AND DECEIT AND/OR NEGLIGENT MISREPRESENTATION

Defendant next argues that plaintiffs' claim for fraud and deceit and/or negligent misrepresentation fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Specifically, *first*, defendant argues that the claim should be dismissed because plaintiffs have not alleged the authority of the persons making the representations. In fact, the complaint includes allegations of many specific incidents of communication with named Chase employees, who are alleged to be employees (Compl. ¶¶ 59–60, 63–67). It is not clear what else defendant would require be alleged. That the complaint does not name the employees' titles or some other detail is of no moment. The authority of the speakers is alleged to be their employment by defendant.

*Second*, defendant argues that this claim should be dismissed because it is based on alleged misrepresentations that are self-contradictory. Defendant cites allegations in the complaint that state plaintiffs were told different and contradictory things by Chase employees as to whether their loan modification would be approved or why it would not be (*id.* ¶¶ 64–65,

10

68–69). This argument does not make sense. The very point of plaintiffs' claim is that Chase made misrepresentations to them that were contradictory and misleading.

*Third*, defendant argues that the alleged misrepresentations concern future conduct, which does not support a claim for fraud. Defendant selectively quotes from *one* sentence in the complaint in support. In fact, the complaint contains multiple allegations of specific misrepresentations made by defendant including that it did not intend to perform at the time of the representations (*see id.* ¶¶ 57, 63, 104–06). Defendant does not re-raise this issue in reply.

Therefore, defendant's motion to dismiss plaintiffs' claim for fraud and deceit and/or negligent misrepresentation is **DENIED**.

### E. NEGLIGENCE

Defendant next argues that plaintiffs' claim for negligence should be dismissed. Defendant's main argument is that it owes no duty of care to plaintiffs. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. . . . Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991) (citations and quotation marks omitted). On this basis, defendant argues "[p]laintiffs do not, and cannot, demonstrate any relationship with [Chase] giving rise to any duty, or that [Chase] acted beyond the domain of a usual money lender" (Br. 15 (emphasis omitted)). Yet the complaint alleges that defendant went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan. Contrary to defendant, this is precisely "beyond the domain of a usual money lender." Plaintiffs' allegations constitute sufficient active participation to create a duty of care to plaintiffs to support a claim for negligence. Therefore, defendant's motion to dismiss this claim is **DENIED**.

### F. VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

Defendant moves to dismiss plaintiffs' claim for violation of RESPA. Once again, defendant's arguments do not reflect an accurate reading of the complaint, which is the subject of

11

a motion to dismiss. Defendant argues, *first*, that plaintiffs have not alleged facts that they sent two qualified written requests to Chase under RESPA. 12 U.S.C. 2605(e)(1)(B). In fact, the complaint states that both requests sent by plaintiffs to Chase "stat[ed] and detail[ed] the reasons for [p]laintiffs' belief that" their accounts were in error, and the complaint describes those reasons (Compl. ¶¶ 72, 122–23). As alleged, the correspondence is sufficient to qualify under RESPA at this stage.

*Second*, Chase argues that this claim should fail because the complaint does not include facts demonstrating that Chase's failure to respond caused plaintiffs pecuniary damage. In opposition, plaintiffs point to allegations specifying the actual damage they suffered as a result of RESPA violations (*see id.* ¶¶ 127, 129). Defendant does not respond in reply to why these allegations do not suffice.

*Third*, defendant argues that plaintiffs' claim fails because of "[p]laintiffs' own admission that [Chase] has responded to at least one of their two [qualified written requests]" (Br. 17). Yet under RESPA a loan servicer is required to both acknowledge receipt within twenty days and then take action with respect to the inquiry within sixty days. 12 U.S.C. 2605(e). The complaint herein concedes that Chase acknowledged receipt of plaintiffs' second qualified written request, but it alleges that Chase failed to make a full response to both of plaintiffs' requests (Compl. ¶¶ 72, 122–23, 125). Defendant is thus incorrect that plaintiffs' allegations contradict their claim.

*Fourth*, and finally, defendant argues that the complaint does not qualify for statutory damages, as it does not allege a pattern or practice of noncompliance with RESPA. 12 U.S.C. 2605(f)(1)(B). Plaintiffs contend that two violations of RESPA are sufficient to constitute a "pattern or practice" (*see* Compl. ¶ 128). Yet plaintiffs fail to cite any law to support this position. In fact, it is contrary to the analysis of decisions that have addressed this issue, and although none of those decisions are binding on this order, they are persuasive. For example, in *McLean v. GMAC Mortgage Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), the court held: "at best, a jury could conclude that GMAC violated RESPA on two occasions. . . . [T]his is insufficient to support a pattern or practice of noncompliance as required by section 2605(f)." *See also In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) ("the Court is unpersuaded that the

12

1    Debtor has established a 'pattern or practice' for purposes of RESPA's statutory damage

2    provision by showing just two violations"). This squares with a common-sense approach that two

3    violations, without more, cannot amount to a "routine way of operating," in keeping with the

4    usual meaning of the phrase "pattern or practice." *Ibid.* Therefore, plaintiffs' allegations seeking

5    statutory damages under RESPA are **DISMISSED**. Plaintiffs may seek leave to file an amended

6    complaint including factual allegations of a standard or institutionalized practice of

7    noncompliance by Chase, but if they continue to base their RESPA claim on only two violations

8    they should omit their request for statutory damages.

9    Regardless of this latter exception, for reasons stated above, plaintiffs' complaint states a

10   claim for violation of RESPA, so defendant's motion as to this claim is otherwise **DENIED**.

11       **G.    VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**

12   Lastly, defendant moves to dismiss plaintiffs' claim for violation of California Business

13   and Professions Code Section 17200. Chase argues that plaintiffs lack standing to bring a Section

14   17200 claim because they have not been injured. This assertion plainly ignores the allegations in

15   the complaint, which specify various injuries (Compl. ¶¶ 59, 61, 71, 141). In reply, defendant

16   argues for the first time that the complaint fails to allege a causal connection between misconduct

17   and injury. This argument fails both because it is raised for the first time in reply and because it

18   is an incorrect representation of the allegations in the complaint (*see ibid.*).

19   The following arguments are made in passing in defendant's opening brief but are not re-

20   raised in reply.

21   *First*, defendant argues that plaintiffs "fail to allege that [Chase] violated an underlying

22   law, and in turn, [they] cannot state a claim for 'unlawful' business practices" (Br. 19). Chase

23   seems to argue that for the same reasons stated in its arguments for dismissal of plaintiffs'

24   negligence and RESPA claims, the Section 17200 claim should be dismissed as dependent on

25   those other claims. As the negligence and RESPA claims survive defendant's motion, this

26   argument fails.

27   *Second*, defendant argues that plaintiffs "fail to allege with particularity the facts

28   supporting the claim for 'unfair' business practices" (Br. 19). It is unclear why defendant

13

1  contends that such facts would be have to pled *with particularity*. Moreover, as previously
2  discussed, plaintiffs have stated a claim for breach of contract, and under California law, "a
3  systematic breach of certain types of contracts . . . can constitute an unfair business practice under
4  the UCL." *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 490 (2010). Whether
5  the alleged breach of contract here amounts to such practice will be the subject of fact discovery.

6      *Third*, defendant argues that "contrary to [p]laintiffs' allegations, there has been no
7  recording of a notice of default and Plaintiffs have no legal right to a loan modification" (Br. 19).
8  These arguments are irrelevant at the motion to dismiss stage.

9      *Fourth*, defendant argues that plaintiffs fail to "allege that the purported unfair business
10 practices offend an established public policy or when the practice is immoral, unethical,
11 oppressive, unscrupulous or substantially injurious to consumers" (Br. 19). It is sufficient that
12 plaintiffs have alleged injury by a policy of defendant that violates law and public policy (Compl.
13 ¶¶ 132–43).

14     *Fifth*, defendant argues that plaintiffs "fail to allege that the public had any expectation or
15 made any assumptions regarding the purported loan modification at issue in support of a claim
16 under the fraudulent prong of Section 17200" (Br. 19). In fact, the complaint is replete with
17 allegations that plaintiffs were misled about the status and process of the loan modification and
18 other facts related to their loans (*see, e.g.*, Compl. ¶¶ 50–70, 138, 140–41). Defendant neglects to
19 intimate why this does not suffice.

20     *Sixth*, defendant argues that plaintiffs "do not allege any actionable facts that [Chase]
21 made any misrepresentation of any kind regarding the loan modification" (Br. 19). To the
22 contrary, this order makes clear that the facts alleged are actionable, in that they state claims for
23 relief.

24     Therefore, defendant's motion to dismiss plaintiffs' Section 17200 claim is **DENIED**,
25 subject to summary judgment practice after the facts are developed.

26     **H.    REQUEST FOR JUDICIAL NOTICE**

27     Defendant requests that judicial notice be taken of certain documents submitted in support
28 of its motion. FRE 201 governs judicial notice of adjudicative facts and states: "A judicially

14

noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Moreover, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." *Ibid.*

Defendant makes its request as to the following documents:

1. The deed of trust recorded on or about March 8, 2006, with the Marin County Recorder's Office as instrument number 2006-0014429.

2. The deed of trust recorded on or about April 16, 2007, with the Marin County Recorder's Office as instrument number 2007-0023040.

3. The purchase-and-assumption agreement between the FDIC and JPMorgan Chase Bank, N.A., dated September 25, 2008.

The first two documents do not contain adjudicative facts considered by this order, so judicial notice will not be taken of them. Therefore, defendant's request for judicial notice as to these documents is **DENIED**. The purchase-and-assumption agreement, on the other hand, was indeed considered by this order as discussed above. This order takes judicial notice of the agreement because it is a document published by the federal government, a matter of public record, and its accuracy "cannot reasonably be questioned." *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 (9th Cir. 2007) (taking judicial notice of a government publication). Accordingly, as to this document, defendant's request is **GRANTED**.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Within seven days of this order, plaintiffs must file their third amended complaint, which must cure the few deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: March 28, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

15