1   NIALL P. McCARTHY (SBN 160175)
    nmccarthy@cpmlegal.com
2   ANNE MARIE MURPHY (SBN 202540)
    amurphy@cpmlegal.com
3   ERIC J. BUESCHER (SBN 271323)
    ebuescher@cpmlegal.com
4   **COTCHETT, PITRE & McCARTHY, LLP**
    840 Malcolm Road
5   Burlingame, CA 94010
    Telephone:    (650) 697-6000
6   Facsimile:    (650) 692-3606

7   *Attorneys for Plaintiffs*

8

9                   **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN FRANCISCO DIVISION**

12

13                                              | Case No. C-10-03892-WHA

14
    **ANGELA ANSANELLI**, an individual;
15  **CHARLES ANSANELLI**, an individual,       | **FOURTH AMENDED COMPLAINT
                                                   FOR DAMAGES, RESTITUTION
16                      Plaintiffs,               AND INJUNCTIVE RELIEF**

17            v.                                  **(1)   BREACH OF CONTRACT
                                                   (2)   FRAUD AND DECEIT,
18  **JPMORGAN CHASE BANK, N.A;                          AND/OR NEGLIGENT
    SEQUOIA PACIFIC MORTGAGE                             MISREPRESENTATION
19  COMPANY, INC.**; and                          (3)   NEGLIGENCE
    DOES 1 through 25, inclusive,                 (4)   VIOLATION OF RESPA
20                                                (5)   VIOLATION OF UNFAIR
                       Defendants.                      COMPETITION LAW**
21
                                                 **JURY TRIAL DEMANDED**
22
                                                 Judge:      Hon. William Alsup
23

24

25

26

27

28

☯
LAW OFFICES
Cotchett,
Pitre &
McCarthy, LLP

**FOURTH AMENDED COMPLAINT**; Case No. C-10-03892-WHA

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C.   Other Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    D.   Agency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    E.   Aiding and Abetting/Conspiracy. . . . . . . . . . . . . . . . . . . . . . . 2

    F.   Alter Ego. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  VENUE AND JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  TOLLING OF STATUTES OF LIMITATION BY FRAUDULENT CONCEALMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   FACTUAL ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   The Foreclosure Crisis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   JPMorgan's Purchase Of Washington Mutual. . . . . . . . . . . . . . 4

    C.   Plaintiff's Purchase Of Their Home And the Subject Loans . . . . . . . . . . . 5

    D.   Plaintiffs' Attempts To Modify The Loans With JPMorgan. . . . . . . . . . . . 7

VI.  CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FIRST CAUSE OF ACTION
BREACH OF CONTRACT
(Breach of Contract
Against Defendant JPMorgan Chase Bank, N.A.). . . . . . . . . . . . . . . . . . . . . 12

SECOND CAUSE OF ACTION
FRAUD AND DECEIT AND/OR NEGLIGENT MISREPRESENTATION
(Fraud and Deceit, and/or Negligent Misrepresentation
Against All Defendants). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

THIRD CAUSE OF ACTION
NEGLIGENCE
(Negligence - Cal. Civ. Code §§ 1714(a) and 3333
Against All Defendants). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FOURTH CAUSE OF ACTION
VIOLATION OF RESPA
(Violation of 12 U.S.C. § 2605(e) (RESPA) - Failure to Respond to QWR
Against Defendant JPMorgan). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

FIFTH CAUSE OF ACTION
VIOLATION OF THE UNFAIR COMPETITION LAW
(For Unfair Competition in Violation of
Cal. Bus. & Prof. Code § 17200 *et seq.*
Against All Defendants). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**PRAYER FOR RELIEF**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**DEMAND FOR JURY TRIAL**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I.   <u>INTRODUCTION</u>

1.     Small business owners and home owners have been hit especially hard by the economic downturn during the past several years.  Plaintiffs Charles Ansanelli and Angela Ansanelli ("Plaintiffs") fit into each of these categories.  They purchased a home in 2000 and were persuaded to refinance that loan and take out equity from their home during the "boom" years by Defendant Sequoia Pacific Mortgage Company ("Sequoia") and Defendant JPMorgan Chase Bank ("JPMorgan" or "Chase") as well as by Washington Mutual Bank ("WaMu") prior to it being purchased by JPMorgan.  The result was more debt than the Plaintiffs could afford to pay, which Defendants knew would be the case when they provided the refinance loan and a second loan to the Plaintiffs.  Unfortunately, instead of working with Plaintiffs to resolve these issues, Chase forced Plaintiffs to engage in a Sisyphean task of trying to receive a mortgage modification in order to reduce their debt and monthly payments to a manageable amount.

2.     As a result of the Defendants' conduct, Plaintiffs have been forced to take on significant debt in order to continue to make payments on their loans, they have just received notification that their home may be foreclosed upon, and Ms. Ansanelli's previously excellent credit has been tarnished and significantly damaged.  All of this is now coming to a head at a time when Plaintiffs are beginning to get back on their feet and their small business plans are recovering and expanding.

# II.   <u>PARTIES</u>

### A.   <u>Plaintiffs</u>

3.     Plaintiff Charles Ansanelli is, and at all times herein was, a resident of Marin County, California.

4.     Plaintiff Angela Ansanelli is, and at all times herein was, a resident of Marin County, California

### B.   <u>Defendants</u>

5.     Defendant JPMorgan Chase Bank, N.A., ("JPMorgan" or "Chase") is a National Association organized under the laws of the United States, having its principle

1  place of business in Seattle, Washington.  JPMorgan conducts business in California.

2  JPMorgan purchased Washington Mutual Bank ("WaMu") on September 25, 2008.

3        6.    Defendant Sequoia Pacific Mortgage Company ("Sequoia") is a California

4  Corporation doing business in Marin County, California.[1]

5      **C.**    **Other Defendants**

6        7.    The true names and capacities, whether individual, corporate, associate, or

7  otherwise, of Defendants DOES 1 through 25 are unknown to Plaintiff, who therefore

8  sues said Defendants by such fictitious names pursuant to Code of Civil Procedure

9  section 474.  Plaintiff alleges that each of said fictitious Defendants is in some manner

10  responsible for the acts hereinafter set forth.  Plaintiff will amend this Complaint to show

11  the true names and capacities of these DOE Defendants, as well as the manner in which

12  each fictitious Defendant is responsible, when these facts are ascertained.

13      **D.**    **Agency**

14        8.    Plaintiffs are informed and believe, and on that basis allege, that at all times

15  herein mentioned each of the Defendants was an agent, servant, employee, and/or joint

16  venturer of each of the remaining Defendants, and was at all times acting within the

17  course and scope of such agency, service, employment, and/or joint venture, and each

18  Defendant has ratified, approved, and authorized the acts of each of the remaining

19  Defendants with full knowledge of said facts.

20      **E.**    **Aiding and Abetting/Conspiracy**

21        9.    Defendants, and each of them, aided and abetted, encouraged, and rendered

22  substantial assistance to the other Defendants in breaching their obligations to Plaintiffs,

23  as alleged herein.  In taking action, as alleged herein, to aid and abet and substantially

24  assist the commissions of these wrongful acts and other wrongdoings complained of, each

25

26  [1]    Plaintiffs filed their original and first amended complaints in Marin County

27  Superior Court prior to obtaining counsel.  Plaintiffs' current counsel was appointed
through the Federal Pro Bono Project by order of this Court on January 3, 2011.  The

28  prior complaints named three additional Defendants, the FDIC as receiver for WaMu,
First American Title Company and Fidelity National Title Company.  These Defendants
have been dismissed from the case with prejudice by Plaintiffs.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**FOURTH AMENDED COMPLAINT**; Case No. C-10-03892-WHA      2

of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**F.   Alter Ego**

10.     There is a unity of interest between Defendants, and each acts as the alter ego of the other.

## III.   VENUE AND JURISDICTION

11.     This matter was removed to this Court by the Federal Deposit Insurance Corporation, who was formerly a Defendant in this action, on August 31, 2010.  Counsel for Plaintiffs were appointed through the Federal Pro Bono Project on January 3, 2011.

12.     This court further has jurisdiction under 28 U.S.C. § 1331 pursuant to 12 U.S.C. § 2605.

13.     This Court has personal jurisdiction over the parties in this action by the fact that Defendants are corporations that are licensed to do business in the state of California or otherwise conduct business in the state of California.

14.     Venue is proper in this Court as the unlawful practices and conduct are alleged to have been committed in Marin County, California.  Plaintiffs' home, which is the subject of this litigation, is in Marin County, California, all Defendants reside in this district within the meaning of 28 U.S.C. § 1391(c), and Defendants regularly conduct business in this district.

## IV.   TOLLING OF STATUTES OF LIMITATION BY FRAUDULENT CONCEALMENT

15.     Any applicable statutes of limitation have been tolled by Defendants' continuing, knowing and active concealment of the facts alleged herein.  By virtue of Defendants' concealment and misrepresentations to Plaintiffs, Plaintiffs could not and did not discover Defendants' actions.

16.     In the alternative, Defendants should be estopped from relying on any statutes of limitation.  Defendants owed Plaintiffs an affirmative duty of full and fair

1   disclosure, but knowingly failed to honor and discharge such duty.  Finally, Defendants'

2   conduct is not barred by any statutes of limitation because Defendants' conduct

3   constitutes an ongoing violation of Plaintiffs' rights, which continues to the present.

4   **V.    FACTUAL ALLEGATIONS**

5           **A.    The Foreclosure Crisis**

6           17.    For the past three years, the United States has been in a foreclosure crisis.

7   In late 2009, one in eight U.S. mortgages was in foreclosure or default, and 2.8 million

8   homeowners received foreclosure notices in 2009.

9           18.    California has been one of the states hardest hit by this crisis.  California

10  had the highest number of foreclosures in the United States for all of 2009.  RealtyTrac

11  reports that the number of total California properties with foreclosure filings in 2009 was

12  632,573.  This represents a nearly 21% increase over 2008 and a 153% increase from

13  2007.  In the first quarter of 2010, California posted the nation's fourth highest

14  foreclosure rate; during that period, California accounted for 23% of the nation's total

15  foreclosure activity.

16          19.    The foreclosure crisis "continues unabated," as a Congressional oversight

17  panel stated in April 2010.

18          **B.    JPMorgan's Purchase Of Washington Mutual**

19          20.    In September of 2008, WaMu suffered a severe decline in value and was

20  taken over by the Office of Thrift Supervision with the Federal Deposit Insurance

21  Corporation as Receiver for WaMu.

22          21.    On September 25, 2008 the FDIC as Receiver for WaMu and JPMorgan

23  entered into a Purchase and Assumption Agreement.  Pursuant to that agreement,

24  JPMorgan agreed to pay $1,888,000,000.00 to purchase WaMu.  Pursuant to the Purchase

25  and Assumption Agreement, JPMorgan serviced mortgages which were previously

26  serviced by WaMu, including one of the loans at issue in this matter.[2]

27  _____

28  [2]    Pursuant to this Court's order on JPMorgan's Motion to Dismiss the Second
     Amended Complaint [Docket No. 97], Plaintiffs' allegations against JPMorgan rest upon
     its own conduct after purchasing WaMu from the FDIC, not the conduct of WaMu prior

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**FOURTH AMENDED COMPLAINT**; Case No. C-10-03892-WHA                    4

### C.   Plaintiff's Purchase Of Their Home And the Subject Loans

22.   In April 2000, Plaintiffs purchased their home, located at 176 Wild Horse Valley Road, Novato, California (the "Home").  Plaintiffs paid a $500,000 down payment and Plaintiff Angela Ansanelli obtained a loan for the remaining $359,000.

23.   In March of 2006, Plaintiffs were suffering financially.  They own a small business which faltered and left them with limited income.  Defendant Sequoia assisted Plaintiffs in securing an offer from WaMu to allow Plaintiffs to refinance their high-interest mortgage with a lower interest loan based on Plaintiff Angela Ansanelli's flawless credit.  This transaction is referred to as Loan Number 3061620740.  It is referred to herein as the "Refinance Loan."  This loan was for $585,000.00.

24.   In obtaining the Refinance Loan, Plaintiffs were led to believe that the offer was an exclusive benefit to borrowers with outstanding credit.  The loan contained a $200,000 cash out which Plaintiffs planned to use to help them through their immediate financial crisis.  At the advice of Defendant Sequoia and WaMu, Plaintiffs removed Mr. Ansanelli from the title to the home and used Mrs. Ansanelli's credit to qualify.

25.   The Refinance Loan was secured by a Deed of Trust recorded against the Home.  At all times during the application, Plaintiffs were honest and forthcoming with their financial information and complied with WaMu's requests.  Both WaMu and Defendant Sequoia represented to Plaintiffs that based on WaMu's analysis of the financial information Mrs. Ansanelli provided, she would be able to meet all loan payments and urged her to enter into the transaction.

26.   The Refinance Loan was a no document, interest only loan, secured by the Home, based on what Sequoia and WaMu knew to be an unreasonably inflated appraisal value, which was procured by WaMu and Sequoia in order to permit WaMu to make the Refinance Loan.  After obtaining the Refinance Loan from WaMu, Mr. Ansanelli was added back onto the title by means of an Interspousal Transfer Grant Deed.

---

to that purchase.

**FOURTH AMENDED COMPLAINT**; Case No. C-10-03892-WHA          5

27. One year later, in April 2007, Plaintiff's financial situation had continued to deteriorate. A second time they used Defendant Sequoia to procure a loan in order to have a safety net for their family. Sequoia arranged for a $200,000 Home Equity Loan for Plaintiffs through JPMorgan Chase Bank, N.A. This transaction is referred to as Reference Number 070781310420 or Account Number 0918463286. It is referred to herein as the "HEL."

28. The HEL was also a no document, interest only loan. The amount of the monthly payment was calculated based on a 360 month term, but the HEL required a balloon payment after 180 months.

29. In April 2007, Plaintiffs signed a closed-end Deed of Trust securing the HEL with the Home.

30. In processing the HEL, Defendants JPMorgan and Sequoia did not perform a credible analysis of Plaintiffs' ability to repay the loan. Defendant Sequoia executed the entire HEL loan application with no input from Plaintiffs.

31. Defendants Sequoia and JPMorgan represented to Plaintiffs that, based on JPMorgan's analysis of the financial information suppled by Sequoia, they would be able to meet the obligations of the HEL. Plaintiffs signed the pre-completed loan documents under the direction of Sequoia. The HEL was also based on an appraisal contracted by Sequoia. This appraisal was knowingly and unreasonably inflated.

32. As a result of these two loans, the Home secured $785,000 of debt and Plaintiffs were obligated to make monthly payments which were well beyond their means.

33. Plaintiffs believed at all times that Defendants JPMorgan and Sequoia were acting in good faith and in Plaintiffs' best interests. Plaintiffs trusted Defendants to competently assist them throughout the loan process. Plaintiffs had no knowledge of real estate transactions. Contrary to Plaintiffs' belief at the time, Defendants JPMorgan and Sequoia conspired to induce Plaintiffs into signing predatory loans which Defendants knew or should have known Plaintiffs would be unable to repay.

34.     In September of 2008, Mr. Ansanelli was forced to undergo knee surgery which immobilized him for nearly one year and drastically reduced his ability to work. Plaintiffs also incurred other serious and expensive family medical issues.  In January 2009 the sewer pipes under Plaintiff's home ruptured due to a root infestation requiring extensive and expensive repair and replacement.  These unexpected and unforeseen events put Plaintiffs in an incredibly precarious financial position.

35.     Plaintiffs borrowed money and struggled along, and were able to fulfill their obligations under the loans and make all loan payments on both the Refinance Loan and HEL for a year and a half.  However, by November 2008, Plaintiffs recognized they could not sustain the full monthly payments on the loans and were in imminent danger of default.

### D.    Plaintiffs' Attempts To Modify The Loans With JPMorgan

36.     In December 2008, Plaintiffs contacted JPMorgan to request a modification to the Refinance Loan and HEL in order to reduce their monthly payments and attempt to avoid defaulting.  Plaintiffs did not receive a response until March of 2009 to their request.[3/]

37.     On February 13, 2009, Plaintiffs filed a complaint with the Office of the Comptroller of the Currency ("OCC") which included a letter of hardship and their complete financial file.  Plaintiffs sent copies of this letter to JPMorgan and again requested a loan modification for each of their loans.

38.     On March 4, 2009, Plaintiffs received letters from JPMorgan responding to the OCC complaint, indicating and assuring them that the matter was being investigated and promising a prompt response to the matter.

39.     During the time between March 4, 2009 and August 10, 2009 JPMorgan dragged the Plaintiffs along through a slow, frustrating, redundant and fraudulent

---

[3]     Defendant JPMorgan kept the Refinance Loan and HEL separate during the modification process.  However, JPMorgan was responsible for servicing both loans, although for much of the time it continued to do so in WaMu's name.  Plaintiffs repeatedly requested that the two loans be considered for consolidation together, yet Defendant JPMorgan refused to do so.

1   modification process.  JPMorgan continually demanded piecemeal and duplicative
2   paperwork, indicated that the file was both complete and incomplete and that the process
3   was stalled and proceeding.

4       40.     JPMorgan systematically ignored Plaintiffs written and verbal inquiries and
5   misled Plaintiffs about the status of their modification request in order to extract full
6   payments from Plaintiffs and to discourage Plaintiffs from seeking legal counsel.

7       41.     On August 10, 2009, Plaintiffs received a letter on JPMorgan letterhead
8   stating that their request to modify the Refinance Loan had been denied purportedly
9   because their Loan To Value ("LTV") ratio was too low and because Plaintiffs allegedly
10  had excessive cash reserves.  Both the LTV calculation and the cash reserve amount on
11  which the denial was based were erroneous and known to be erroneous by JPMorgan.

12      42.     Plaintiffs' attempt to modify the HEL was equally muddled, frustrating and
13  contradictory.  JPMorgan's "processing" of the modification request lasted three months
14  and Plaintiffs were informed that their file was both complete and incomplete and that the
15  process was both stalled and proceeding.

16      43.     On June 8, 2009, JPMorgan agreed to place Plaintiffs on a trial
17  modification plan, guaranteeing that the modification would become permanent if
18  Plaintiffs made payments on time and in full for the three month trial period, which
19  covered the months of June, July and August of 2009.  Plaintiffs requested this Trial Plan
20  Agreement in writing.  JPMorgan, however, refused to provide the agreement in writing,
21  with the intention of disavowing the agreement if it became advantageous for them to do
22  so.

23      44.     Plaintiffs made timely payments of the modified amount in June, July and
24  August of 2009.

25      45.     On August 17, 2009, Plaintiffs received a letter from JPMorgan stating that
26  the HEL was "currently in default."  This came as a surprise to Plaintiffs as they had
27  never missed a payment and had made the three trial period payments as required and
28  requested by JPMorgan.  Plaintiffs contacted JPMorgan and spoke to Mr. Mike Harris

1   about their concerns.  Mr. Harris represented that Plaintiffs' trial payments were being

2   held in a suspense account, were not being applied correctly and that default notices were

3   sent out automatically.  Additionally, Mr. Harris indicated that the defaults would

4   adversely affect Plaintiffs' credit rating.

5        46.     This information was **directly in conflict** with representations made by Mr.

6   Chuck Ely, and employee of JPMorgan, at the outset of the trial payment period.  Mr. Ely

7   stated that the Plaintiffs' credit would remain intact and would not be affected by the trial

8   modification.

9        47.     The damage done to the Plaintiffs' credit made it impossible for them to

10  obtain financial products and loans from other institutions to assist Plaintiffs in making

11  the full payments on their Refinance Loan and HEL.

12       48.     Plaintiffs were told that the representative who initiated Plaintiffs Trial Plan

13  Agreement had been transferred to another department and that Plaintiffs could not speak

14  with him about their modification agreement.

15       49.     Plaintiffs spoke with Mr. Roger Conner, yet another JPMorgan employee

16  who represented to Plaintiffs that they were still current on their trial modification plan

17  and instructed them to continue paying the modified amount.  This information was given

18  to Plaintiffs despite the fact that they were receiving collection calls from JPMorgan as

19  early as 7 a.m. during this time period.  Plaintiffs again sought to receive written

20  confirmation or a written Trial Plan Agreement from JPMorgan.  Again, JPMorgan

21  deliberately refused to provide this information with the intent of disavowing the

22  agreement in the future.

23       50.     On September 10, 2009, after paying the modified payments for four

24  months, Plaintiffs were contacted by Ms. Olga Danilova, a JPMorgan employee and

25  informed that Plaintiffs did not have enough funds to qualify for a modification to the

26  HEL.  Ms. Danilova further indicated that all payments going forward needed to be of the

27  full amount, and that the "outstanding balance" needed to be paid to JPMorgan, which

28  inexplicably included late fees and penalties as a result of paying the lower, agreed upon

1   modified amount. Amazingly, this meant that Plaintiffs had been denied modification of

2   the Refinance Loan because they had "excessive" cash reserves and "denied"

3   modification of the HEL because they did not have enough cash reserves. This "denial"

4   occurred after Plaintiffs had fully complied with their obligations under the trial

5   agreement by making on time payments of the modified amount for more than three

6   months.

7       51.    The next day, on September 11, 2009, confused, bewildered and frustrated

8   by the modification process, Plaintiffs contacted the executive offices of JPMorgan to

9   contest the cancellation of their modification. Mr. Steve Regul, a JPMorgan employee,

10  represented to Plaintiffs that JPMorgan would work with them on a modification plan for

11  both the HEL and Refinance Loan.

12      52.    One week later, Mr. Bob Smith, a JPMorgan employee, contacted Plaintiffs

13  to "finalize" their loan modification. As part of this process Mr. Smith requested all of

14  the financial documents and information which Plaintiffs had provided to JPMorgan

15  several times during the previous six months.

16      53.    At the same time JPMorgan was allegedly "finalizing" the loan

17  modifications, the payments Plaintiffs were making on the HEL were taking progressively

18  longer to post to their account. This resulted in Mr. Smith informing Plaintiffs on

19  October 14, 2009 that the trial payment for September had not been made. Plaintiffs

20  produced detailed payment records demonstrating that the payments had been made and

21  had cleared Plaintiffs' checking account on time. Mr. Smith admitted that the problem

22  was an accounting error by JPMorgan. Mr. Smith instructed Plaintiffs to continue paying

23  the modified amounts and to ignore the default notices. Mr. Smith represented that all

24  future payments would be accurately and properly applied to their account.

25      54.    Despite JPMorgan's representation that both loans would be modified and

26  despite the agreement between JPMorgan and Plaintiffs to modify the HEL if Plaintiffs

27  made on time payments for three months, JPMorgan refused to provide any information

28  in writing about the modifications. Between October 11, 2009 and February 19, 2010,

1   Plaintiffs contacted JPMorgan several times to ensure that they were still on the

2   modification plan for the HEL.  Each time JPMorgan confirmed that they were, but for

3   the first time represented that the HEL modification would not become permanent until

4   the Refinance Modification was approved.

5          55.    On February 19, 2010 Plaintiffs received a letter from JPMorgan thanking

6   them for participating in HAMP and informing them that their file was missing critical

7   documents necessary to evaluate their modification request as required by the Trial Plan

8   Agreement previously sent to them.  Plaintiffs had never received a written Trial Plan

9   Agreement, despite their repeated requests for written verification and agreement about

10  the modification plan, and had sent all the necessary documentation to JPMorgan several

11  times.

12         56.    Plaintiffs ceased making the modified payments on the HEL in February

13  2010.  Plaintiffs have not missed any payments and are current on the Refinance Loan.

14  The Refinance Loan is currently scheduled to reset to a significantly higher monthly

15  payment and interest rate in April, 2011.  Plaintiffs fear they will not be able to make

16  these payments unless the loan is modified.

17         57.    In order to make the payments, Plaintiffs were forced to borrow more than

18  $60,000 against their credit cards, cashed out approximately $400,000 in equity from their

19  home and approximately $100,000 on a line of credit through Bank of America.[4]

20         58.    On December 2, 2009, Plaintiffs sent an official Qualified Written Request

21  ("QWR") as defined by the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §

22  2605(e)(1)(B), to JPMorgan stating and detailing the reasons for Plaintiffs' belief that

23  their HEL account was in error.  Plaintiffs received an acknowledgment of receipt of the

24  QWR from Ms. Kay Jackson, an employee at JPMorgan's Home Lending Executive

25  Office on January 6, 2010.  The acknowledgment promised that JPMorgan would provide

26  a "complete and accurate response as soon as possible."  Plaintiffs have never again heard

27  _____

28  [4]      Plaintiffs no longer have the credit line through Bank of America as a result of the
damage done to their credit by the actions of JPMorgan in issuing notices of default on
the HEL even though Plaintiffs were making timely payments.

1   from Ms. Jackson or the Home Lending Executive Office regarding their QWR.  This was

2   the second QWR sent to JPMorgan by Plaintiffs.

3       59.    On or about January 20, 2011, Plaintiffs received a letter from JPMorgan

4   indicating that the HEL was in default and that foreclosure proceedings had been initiated

5   on the account.  The letter provided a phone number for the California Reconveyance

6   Corporation, who was identified as the "foreclosure attorneys" for JPMorgan and

7   instructed Plaintiffs to contact them for further information.  That phone number, (813)

8   775-2340, was and continues to be inactive.

9   **VI.    CAUSES OF ACTION**

10                  **FIRST CAUSE OF ACTION**

11                     **BREACH OF CONTRACT**

12                       **(Breach of Contract**

13           **Against Defendant JPMorgan Chase Bank, N.A.)**

14       60.    Plaintiffs reallege each and every allegation above as if set forth in its

15   entirety in this Cause of Action.

16       61.    Plaintiffs entered into an oral Trial Period Plan ("TPP") contract with

17   JPMorgan regarding the HEL.  JPMorgan made an oral TPP offer to Plaintiffs on or about

18   June 8, 2009.  Plaintiffs formed a binding, enforceable agreement with JPMorgan when

19   they made the three trial period payments in June, July and August of 2009.[5/]  Payments

20   made in accordance with the oral TPP offer constitute consideration.  In the alternative,

21   the TPP Contracts or offers, coupled with Plaintiffs' payments constitutes an implied

22   contract.

23       62.    JPMorgan failed to perform under the TPP contract with Plaintiffs.

24   JPMorgan's refusal to perform its duties under the TPP contract was unlawful, without

25   justification and/or excuse, and constituted a total and material breach of the TPP contract

26   between the parties.

27

28

[5]      Plaintiffs made payments pursuant to the TPP from June 2009 through February
2010.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

63.     JPMorgan breached the TPP contract with Plaintiffs by failing to offer Plaintiffs a permanent HAMP modification after payment of the trial period payments was made on time and in full.

64.     Plaintiffs gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contract with JPMorgan.

65.     As a result of JPMorgan's breach of the TPP contract, Plaintiffs suffered and continue to suffer reasonable and foreseeable consequential damages, including payment of increased interest, longer loan payoff times, higher principle balances, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to attempt to prevent and fight pending foreclosure, and other damages for breach of contract.

66.     Plaintiffs have been damaged by JPMorgan's breach of the TPP contract in an amount to be proven at trial.

67.     Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover reasonable attorney's fees, costs, and expenses incurred in bringing this action.

## SECOND CAUSE OF ACTION

### FRAUD AND DECEIT AND/OR NEGLIGENT MISREPRESENTATION

#### (Fraud and Deceit, and/or Negligent Misrepresentation

#### Against All Defendants)

68.     Plaintiffs reallege each and every allegation above as if set forth in its entirety in this Cause of Action.

69.     Defendants colluded in the facilitation and procurement of the Refinance Loan and the HEL, which were predatory in nature and injurious to Plaintiffs.

70.     Defendants at various times throughout the origination and servicing of the loans knowingly misrepresented, inter alia, the following:

1       a.      The nature and terms of the loans;

2       b.      That the loans were a good financial decision for Plaintiffs;

3       c.      The modification process of the loans; and

4       d.      The value of the Plaintiffs' Home which was used to justify the

5               loans.

6       71.     Defendants knowingly or negligently defrauded Plaintiffs, causing them to

7   agree to enter into loans which Defendants knew Plaintiffs were unlikely to ever be able

8   to pay off.  Because of Plaintiffs' desperation and desire to stay in their Home, they

9   justifiably relied on Defendants' misrepresentations about the terms of the loans, their

10  ability to afford the loans and the value of their home.  This reliance was detrimental to

11  the Plaintiffs.

12      72.     Defendant JPMorgan falsely represented to Plaintiffs that the trial

13  modification of the HEL loan would become permanent if Plaintiffs remitted the

14  modified payment for three months, on time and in full.  JPMorgan knew this was false,

15  per its own policies and procedures.  Defendant JPMorgan intentionally or negligently

16  misrepresented to Plaintiffs that they were still on a trial modification plan, when in fact,

17  Plaintiffs' modified payments were being recorded as insufficient.  Plaintiffs justifiably

18  relied on these statements as JPMorgan is the servicer and originator of the HEL loan and

19  had authority to approve the requested modification.  JPMorgan's misrepresentation

20  resulted in escalating late fees, penalties and other charges and ultimately sent the HEL

21  into default and now places the Home at risk of foreclosure.

22      73.     Defendant Sequoia committed fraud when it knowingly misrepresented

23  Plaintiffs' income on the loan applications.  Plaintiffs did not report, nor were they asked

24  to report their actual income for the purpose of determining whether they qualified for the

25  loans.  Defendant Sequoia knew of the falsity because, without the confidential

26  employment information that could **only** be supplied by Plaintiffs, the income information

27  included on the application is necessarily false.  Sequoia intentionally entered the false

28

information on the applications in order to qualify Plaintiffs for predatory loans which they had no ability to repay.

74.     It was in Sequoia's best interest to see that all loans it brokers be consummated, regardless of ability to repay or propriety of entering into the loans. Plaintiffs justifiably relied on Defendant Sequoia to comply with reasonable standards of professional conduct and ethics in using its expertise to match them with an appropriate loan product.

75.     As a result of Defendants' misrepresentations, Plaintiffs have been damaged in an amount to be proven at trial.

76.     Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, costs, and expenses incurred in bringing this action.

## THIRD CAUSE OF ACTION

### NEGLIGENCE

### (Negligence - Cal. Civ. Code §§ 1714(a) and 3333

### Against All Defendants)

77.     Plaintiffs reallege each and every allegation above as if set forth in its entirety in this Cause of Action.

78.     All Defendants owed a duty of care to avoid foreseeable injury to Plaintiffs person or property.  Defendants breached that duty by colluding to lure Plaintiffs into predatory loans that Defendants knew or should have known Plaintiffs would default on.

79.     As a direct and foreseeable result of Defendants' behavior, Plaintiffs suffered harm, including but not limited to the destruction of their credit, being forced to borrow excessive amounts of money, having the equity stripped from their home and, now, facing foreclosure.

80.     Defendant JPMorgan processed and approved the HEL under a "Stated Income" program that requires employment verification but does not require income verification.

81.     JPMorgan had a duty to investigate the reasonableness of the stated income and confirm that Plaintiffs had the ability to repay the loans.  JPMorgan breached that duty when they qualified Plaintiffs for the HEL loan based on the overstated income supplied by Defendant Sequoia.

82.     JPMorgan also breached their duty when the qualified Plaintiffs for the initial interest-only payment, with knowledge that the initial interest-only payment was scheduled to convert to a fully amortized payment.  JPMorgan failed to qualify Plaintiffs at the fully indexed, fully amortized payment amount.

83.     JPMorgan had a duty to competently and reasonably work with Plaintiffs in their efforts to modify their two loans.  JPMorgan's conduct breached this duty in the following ways:

(a)     By failing to respond for three months to Plaintiffs' initial request to discuss modification options related to the Refinance Loan and HEL;

(b)     By demanding piecemeal and duplicative paperwork from Plaintiffs in processing Plaintiffs' modification requests;

(c)     By systematically ignoring Plaintiffs' written and verbal inquiries regarding the status of their modification requests;

(d)     By providing misleading information regarding the status of Plaintiffs' modification requests;

(e)     By failing to accurately assess Plaintiffs' LTV ratio;

(f)     By making erroneous assessments of Plaintiffs' cash reserves;

(g)     By providing conflicting information about the reasons Plaintiffs' two modification requests were denied;

(h)     By failing to properly apply payments made by Plaintiffs to their accounts during the Trial Period Plan;

(i)     By failing to provide complete and accurate information regarding the impact of the Trial Period Plan on Plaintiffs' credit; and,

1   (j)   By providing inaccurate information to Plaintiffs in written correspondence,

2   including providing a disconnected phone number for the "foreclosure

3   attorneys" of JPMorgan Chase (identified as California Reconveyance

4   Corporation) in a letter dated January 14, 2011.

5   84.   Defendant Sequoia was negligent in directing Plaintiffs into loans for which

6   they were not qualified.  Sequoia was Plaintiff's broker in the origination of both the

7   Refinance Loan and HEL.  As Plaintiffs' broker and fiduciary, Sequoia owed a duty to

8   Plaintiffs to execute decisions in the best interests of the Plaintiffs.  Sequoia breached that

9   duty when it negligently qualified Plaintiffs for loans without reasonable (or any)

10  investigation into whether or not Plaintiffs could sustain payments on the loans.

11  Defendant made no effort to educate Plaintiffs as to the nature, risks or possible

12  consequences associated with the loans.

13  85.   As a result of Defendants' conduct, Plaintiffs have and will continue to

14  suffer reasonable and foreseeable consequential damages resulting from such actions and

15  representations, including payment of increased interest, longer loan payoff times, higher

16  principle balances, deterrence from seeking other remedies to address their default and/or

17  unaffordable mortgage payments, damage to their credit, additional income tax liability,

18  costs and expenses incurred to prevent or fight foreclosure, and other damages for breach

19  of contract.

20  86.   Plaintiffs have been damaged by Defendants' actions and inactions in an

21  amount to be proven at trial.

22  **FOURTH CAUSE OF ACTION**

23  **VIOLATION OF RESPA**

24  **(Violation of 12 U.S.C. § 2605(e) (RESPA) - Failure to Respond to QWR**

25  **Against Defendant JPMorgan)**

26  87.   Plaintiffs reallege each and every allegation above as if set forth in its

27  entirety in this Cause of Action.

28

⊕
LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**FOURTH AMENDED COMPLAINT**; Case No. C-10-03892-WHA                    17

88.     Plaintiffs sent a QWR to Defendant JPMorgan on two occasions, August 26, 2009, and December 2, 2009.  Pursuant to 12 U.S.C. § 2605(e)(2), Defendant had sixty (60) days to respond to the QWR and twenty (20) days to acknowledge receipt of the QWR.

89.     The August 26, 2009 correspondence from Plaintiffs to JPMorgan stated the names of Plaintiffs and their partial account numbers, information sufficient to identify the account of the borrower.  The letter further stated the errors Plaintiffs believed JPMorgan was making in misapplying loan payments, based on their paying a modified amount on their HEL and seeking to ensure that the mistaken actions JPMorgan was taking did not hurt their credit and seeking corrections of those mistakes by JPMorgan.

90.     The December 2, 2009 correspondence from Plaintiffs to JPMorgan included the name and loan numbers (for both the Refinance Loan and the HEL) of Plaintiffs.  The letter further stated it was a "Qualified Written Request" under RESPA. Enclosed with the December 2, 2009 letter was a letter sent from Plaintiffs to the OCC detailing Plaintiffs belief as to why their account was in error and the actions taken by JPMorgan which Plaintiffs believed were incorrect in denying the modifications and misapplying payments.

91.     JPMorgan violated RESPA because it failed to provide a written response acknowledging receipt of the first QWR within 20 days of the receipt of the first request. JPMorgan also failed to make appropriate corrections to Plaintiffs' account in response to this QWR, or to investigate or to explain why it would not or could not do so.

92.     Plaintiffs received acknowledgment of the receipt of the second QWR on January 6, 2010.  However, Plaintiffs never received any further response to their QWR.

93.     Defendant JPMorgan thus violated RESPA by failing to make appropriate corrections to Plaintiffs' account in response to any of their QWRs, or to investigate or to explain why it would or could not do so.

94.     Upon information and belief, JPMorgan has violated RESPA, 12 U.S.C. § 2605(e)(3), by providing information to consumer reporting agencies regarding overdue

1  payments allegedly owed by Plaintiffs that were related to their QWRs, many of which

2  were neither late nor overdue.

3       95.    As a result of JPMorgan's violations of RESPA Plaintiffs have suffered

4  actual damages, including but not limited to devastation of their credit, monetary

5  damages, and threatened foreclosure of their home.

6       96.    As a result of Defendants' violations of RESPA, Plaintiffs have been

7  damaged in an amount to be proven at trial.

8       97.    Pursuant to 12 U.S.C. § 2605(f)(3), Plaintiffs are entitled to recover their

9  reasonable attorney's fees and costs incurred in bringing this action

10                          **FIFTH CAUSE OF ACTION**

11            **VIOLATION OF THE UNFAIR COMPETITION LAW**

12   **(For Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.***

13                          **Against All Defendants)**

14       98.    Plaintiffs reallege each and every allegation above as if set forth in its

15  entirety in this Cause of Action.

16       99.    The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et

17  seq. ("UCL"), defines unfair competition to include any "unlawful," "unfair," or

18  "deceptive" business act or practice.  Cal. Bus. & Prof. Code § 17200.  The UCL

19  authorizes this Court to issue whatever orders or judgments may be necessary to prevent

20  unfair or unlawful practices, or to "restore to any person in interest any money or

21  property, real or personal, which may have been acquired by means of such unfair

22  competition."  Id. § 17203.

23       100.   JPMorgan's acts and practices alleged herein are unlawful business

24  practices in that they violate state and law, including but not limited to violations of

25  RESPA and Cal. Civ. Code §§ 1714(a) and 3333, as alleged in this Complaint.

26       101.   Sequoia's acts and practices alleged herein are unlawful business practices

27  in that they violate state law, including but not limited to violations of Cal. Civ. Code §§

28  1714(a) and 3333.

⊕
LAW OFFICES
COTCHETT,
COTCHETT,
PITRE &
MCCARTHY, LLP

**FOURTH AMENDED COMPLAINT**; Case No. C-10-03892-WHA        19

102.    JPMorgan's acts and practices alleged herein constitute unfair business practices, including, without limitation, the following practices:

    a.    Failing to perform loan servicing functions consistent with its responsibilities to Plaintiffs and its responsibilities under HAMP;

    b.    Failing to properly supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel, and personnel implementing its modification programs;

    c.    Failing to permanently modify loans and/or provide alternatives to foreclosure, and using unfair means to keep Plaintiffs in temporary modification contracts, including, without limitations, routinely demanding information it already had and failing to communicate accurately or consistently with Plaintiffs about the status of their loan modification applications;

    d.    Making inaccurate calculations and determinations of Plaintiffs' eligibility for permanent modifications; and

    e.    Engaging in acts and practices that prolong of the HAMP process.

103.    Sequoia's acts and practices alleged herein constitute unfair business practices, including, without limitation steering Plaintiffs into loans Sequoia knew Plaintiffs could not ever repay and breaching the fiduciary duty owed to Plaintiffs in order to increase its own profits by closing the mortgage transaction.

104.    JPMorgan's acts and practices alleged herein constitute fraudulent business practices, including, without limitation, the following practices:

    a.    JPMorgan made misrepresentations and omissions of material facts that induced Plaintiffs to enter TPP contracts in order to obtain a permanent modification;

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1                b.      JPMorgan made misrepresentations and omissions of material fact

2                      regarding the status of Plaintiffs' loan modifications and loan

3                      payments;

4                c.      JPMorgan's misrepresentations and omissions are likely to deceive

5                      the reasonable consumer, and did in fact deceive Plaintiffs;

6                d.      JPMorgan's misrepresentations are objectively material to the

7                      reasonable consumer, and therefore reliance upon such

8                      representations may be presumed as a matter of law, and Plaintiffs

9                      did in fact believe the misrepresentations were reasonable and did in

10                    fact rely upon them.

11      105.    Sequoia's acts and practices as alleged herein constitute fraudulent business

12 practices, including, without limitation making misrepresentations and omissions of

13 material facts that induced Plaintiffs to enter into predatory loans which they could not

14 repay.

15      106.    Plaintiffs justifiably and reasonably relied upon these misrepresentations

16 and omissions of material facts.

17      107.    As a result of these violations and unlawful, unfair, and fraudulent business

18 practices, Plaintiffs suffered injury in fact and lost money, including but not limited to,

19 payment of increased interest, longer loan payoff times, higher principle balances, and

20 payment of other charges collected by JPMorgan.

21      108.    Pursuant to California Business and Professions Code section 17200 *et seq.*,

22 Plaintiffs are entitled to enjoin the practice of unfairly denying and failing to enter into

23 permanent loan modifications for homeowners who have complied with the contractual

24 obligations of a TPP Contract, and grant such other and further relief as the Court may

25 deem proper and just.

26      109.    Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs are entitled to

27 recover their reasonable attorney's fees, costs, and expenses incurred in bringing this

28 action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      For Equitable relief, including an Order for JPMorgan to rescind all Notices of Default against Plaintiffs' account and to engage in reasonable efforts to restore Plaintiffs' credit to its previous standing;

2.      The Court grant a Temporary Restraining Order preventing foreclosure against the Plaintiffs' Home;

3.      The Court enter a judgment declaring JPMorgan's acts and practices complained of herein to constitute a breach of contract, and all Defendants' acts and practices complained of herein to be unlawful, unfair and fraudulent as well as a declaration that JPMorgan is required by the doctrine of promissory estoppel to offer permanent modifications of the loans to Plaintiffs;

4.      For injunctive relief against Defendants to prevent future wrongful conduct;

5.      For actual statutory damages according to proof at trial for violations of the breach of contract, or in the alternative, that JPMorgan be ordered to make restitution to Plaintiffs pursuant to Cal. Bus. and Prof. Code § 17203;

6.      For punitive damages pursuant to Cal. Civ. Code § 3294 *et seq.*;

7.      For an award of attorneys' fees and costs pursuant to Cal. Code of Civ. Proc. § 1021.5 and 12 U.S.C. 2605(f)(3);

8.      For such other and further relief as this Court may deem proper.

Dated: May 12, 2011                    **COTCHETT, PITRE & McCARTHY, LLP**


                                        By:    _____/s/ Eric J. Buescher_____
                                               ERIC J. BUESCHER
                                               *Attorneys for Plaintiffs*

1

## DEMAND FOR JURY TRIAL

2        Plaintiffs hereby demand a trial by jury of each and every claim so triable.

3

Dated: May 12, 2011                    **COTCHETT, PITRE & McCARTHY, LLP**

4

5

6                                By:    _____/s/ Eric J. Buescher_____
                                        ERIC J. BUESCHER
7                                       *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28